LILLIE M. SHAY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shay v. Commissioner
Docket Nos. 22650-90, 18838-91
United States Tax Court
T.C. Memo 1992-606; 1992 Tax Ct. Memo LEXIS 635; 64 T.C.M. (CCH) 1067; October 13, 1992, Filed *635 Decision will be entered for respondent in accordance with respondent's revised determinations. For Lillie M. Shay, pro se. For Respondent: Mary Schewatz
COHEN
COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: In these consolidated cases, respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6654(a)
1989
$ 52,422
$ 13,106
$ 3,545
1990
52,880
5,288
3,482
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The above tax deficiencies are based solely upon respondent's determination that petitioner received unreported income in 1989 and 1990 from the sale or exchange of stolen credit cards. At trial, respondent conceded that the income received therefrom was less than originally determined in the statutory notices and submitted revised income computations for 1989 and 1990. Respondent has also conceded the addition to tax determined under section 6651(a)(1) for 1990. We are to decide: (1) Whether *636 petitioner received taxable income during 1989 and 1990 from the sale or exchange of stolen credit cards, (2) if so, whether the income so received is less than respondent's revised determinations, and (3) whether petitioner is liable for the additions to tax for 1989 for failure to file timely a return and for 1989 and 1990 for the underpayment of estimated taxes. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference. On December 30, 1991, respondent filed, and served upon petitioner, a Request for Admissions in each of these two consolidated cases pursuant to Rule 90. All undenied assertions in respondent's requests are deemed admitted and are incorporated herein by this reference. Rule 90(f). Petitioner was an unmarried individual during all relevant times and resided in Pomona, California, when she filed the petitions in these cases. Sometime in 1989, petitioner learned of a way to acquire stolen credit cards from Matthew Reed (Reed). Reed's brother-in-law advised her that Reed could be contacted at his place of work to arrange a purchase of such cards. Reed operated a letter-sorting machine at the *637 Alhambra Main Post Office (the post office) in City of Industry, California. He had access to credit cards mailed by financial institutions to addressees residing in the delivery area of that post office. Petitioner contacted Reed by telephone and arranged to meet with him to transact a sale of stolen credit cards. On an unknown number of occasions thereafter, beginning sometime in 1989 and continuing through the beginning of May 1990, Reed sold to petitioner credit cards that he had intercepted from the mail. For a 1-month period, Reed provided an unknown number of stolen credit cards to his brother-in-law; all other stolen credit cards were sold to petitioner. The credit cards obtained by petitioner included cards issued by several financial institutions, but most were issued by Citibank. The number of credit cards that Reed sold to petitioner on any one occasion varied, as did the price he asked for them. The price paid by petitioner ranged from $ 1,000 to $ 2,000 for 50 cards, or $ 20 to $ 40 per card. Petitioner disposed of the cards either (1) by bartering for such valuable items as a video cassette recorder, television sets, or a car stereo, or (2) by selling the cards *638 outright at whatever price she could attain. She did not maintain any records of her stolen credit card purchase and sales activity. Because of complaints by Citibank and other financial institutions respecting undelivered credit cards, an investigation was commenced in late 1989 by the U.S. Postal Inspection Service. The investigation disclosed that petitioner had been receiving stolen credit cards from Reed. Undercover operations were employed by postal inspectors and police to investigate petitioner. In one such operation, petitioner gave an undercover police officer about 15 stolen credit cards in exchange for a Rolex watch. In another instance, petitioner gave two credit cards to a U.S. Postal Inspection Service confidential informant in exchange for $ 250. In yet another instance, petitioner gave an undercover officer two credit cards in exchange for a clothes washer and dryer. On May 3, 1990, the Los Angeles Police Department arrested petitioner in connection with her stolen credit card activities. They charged her with the sale of receipt of stolen credit cards and with the receipt of stolen property. Pursuant to a search warrant, police seized various documents *639 from petitioner's residence reflecting, among other things, the following cash purchases by petitioner during 1989 and 1990: a 1987 BMW automobile for $ 10,000 on September 29, 1989; a 1986 Chevrolet van for $ 3,800 on November 21, 1989; a 1974 Mercedes Benz automobile for $ 7,500 on December 18, 1989; a down payment of $ 43,000 towards the purchase of real property on January 23, 1990; a 1983 Mercedes Benz automobile for $ 15,000 on February 22, 1990; and a 1957 Classic Jaguar automobile for $ 20,000 on April 22, 1990. The seized documents also reflect that petitioner received insurance proceeds of $ 19,087 on March 31, 1989, as reimbursement for a loss of property caused by fire. In addition, the parties have stipulated that petitioner received $ 20,000 on October 25, 1989, from the sale of real property. Petitioner stated to police at the time she was arrested that she had begun her stolen credit card activities a year and a half prior to her arrest, i.e., she began those activities no later than the beginning of 1989. On December 10, 1990, petitioner pleaded guilty to two counts of the sale or receipt of stolen credit cards in the Superior Court of the State of California, *640 County of Los Angeles. Petitioner did not report for Federal income tax purposes the income received during 1989 from her stolen credit card activities. On July 18, 1990, respondent made a jeopardy assessment of petitioner's 1989 Federal income tax in the amount of $ 66,551. In addition, respondent made a termination assessment for the period January 1 to May 3, 1990, in the amount of $ 53,979. Then, in separate notices of deficiency relating to petitioner's Federal income taxes for 1989 and 1990, respondent determined the tax deficiencies and additions to tax as set forth at the outset of this opinion. The tax deficiencies reflected in the statutory notices are based solely upon respondent's determination that petitioner had income from the sale or exchange of stolen credit cards as follows: 1989
1990
Gross receipts from sale of stolen credit
cards (1,600 cards at $ 250 per card) [1]
$ 200,000
$ 200,000
Less: Costs of goods sold (1,600 cards
at $ 40 per card [1]
32,000
32,000
Unreported income
$ 168,000
$ 168,000
*641 Citibank's Fraud Investigative Unit subsequently compiled a computerized record of Citibank credit cards reported as not received by cardholders. That record indicates that approximately 719 Citibank credit cards (471 during 1989 and 248 during the period January 1 through May 1990) were reported as not recieved by cardholders residing in the Alhambra Main Post Office delivery area. At trial, respondent conceded that the number of credit cards purchased and sold by petitioner was not 1,600 as reflected in the above computation and in the statutory notices. Respondent revised downward, based upon Citibank's computerized record, the income amounts for 1989 and 1990 from the sale or exchange of stolen credit cards to $ 93,810 and $ 43,100, respectively. OPINION Respondent now asserts, after concessions, that the following deficiencies in, and additions to, petitioner's Federal income taxes are in dispute: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6654(a)
1989
$ 32,551
$ 8,138
$ 2,203
1990
16,906
--- 1,112
Petitioner does not dispute that she acquired stolen credit cards and exchanged them for valuable goods. She maintains, however, that *642 (1) she did not exchange any cards for money or its equivalent and therefore could not have realized taxable income and (2) even if she realized income, the income amounts attributed to her by respondent for 1989 and 1990 are excessive. Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); . Gross income for Federal income tax purposes means "all income from whatever source derived". Sec. 61(a). It includes the gains or profits from illegal activities. ; ; , affd. . In computing the gain on the sale or disposition of property, the amount realized includes the fair market value of the property (other than money) received. Sec. 1001(b). We reject petitioner's argument that her bartering with stolen credit cards did not result in taxable income. That contention is clearly contrary *643 to the law and requires no further discussion. In addition, we do not believe petitioner's uncorroborated testimony that she never received money in exchange for stolen credit cards. We are not required to accept such improbable testimony as worthy of belief. , affg. ; . It is apparent from the record of these cases that petitioner made a cash sale of stolen credit cards to a confidential informant working for postal inspectors. Taxpayers are required to keep records sufficient to enable respondent to determine their correct tax liability. Sec. 6001. When such records are not maintained, respondent may determine a taxpayer's income by any method that clearly reflects income. Sec. 446(b); ; . The method used to reconstruct income may be indirect and need only be reasonable in light of all surrounding circumstances. *644 ; ; . Respondent's reconstruction of petitioner's income in the statutory notices of deficiency is based upon Citibank's initial estimate of the number of credit cards that were undelivered to cardholders in the Alhambra Main Post Office delivery area during the relevant period. That number proved to be overstated, and respondent has revised the computations to reflect the actual number of Citibank credit cards reported as undelivered in that area for 1989 and 1990. Those numbers were multiplied by $ 250 to arrive at the amount of gross receipts from credit cards sales. The $ 250 amount was derived from a postal inspector's written statement that petitioner had negotiated with the postal inspector for the sale of one credit card for $ 250. Respondent then allowed a cost-of-goods-sold deduction at a rate of $ 40 per card. That rate was computed based upon a statement by petitioner appearing in a police report that petitioner paid Reed between $ *645 1,000 and $ 2,000 for each 50 cards she purchased from him. Petitioner contends that, even as revised, the income amounts attributed to her for 1989 and 1990 exceed the amounts of income she actually received. She challenges respondent's income reconstruction methodology on two levels. First, petitioner takes issue with the number of stolen credit cards attributed to her sales activity. She asserts that she did not engage in the sale of credit cards until the latter part of 1989 and therefore cards reported missing prior to that time should not be attributed to her. Her testimony at trial, however, is contradicted by an earlier admission: Petitioner stated to police at the time she was arrested that she had begun her stolen credit card activities a year and a half prior to her arrest, i.e., she began those activities no later than the beginning of 1989. Petitioner further asserts that, in addition to Reed, other postal employees of the Alhambra Main Post Office were stealing credit cards and that, because Reed was the only person from whom she obtained credit cards, not all credit cards reported missing can be attributed to her. Reed and the postal inspector who conducted the *646 related investigation testified that they knew of no one else stealing credit cards from the Alhambra Main Post Office during 1989 or 1990. Petitioner subpoenaed a custodian of post office records, who testified that employees other than Reed had been terminated during 1989 and 1990 for stealing credit cards from the mail. This testimony, however, gives us no reliable information from which we can reduce the number of credit cards received by petitioner. Petitioner also argues that, because Reed supplied his brother-in-law with an unknown number of credit cards for a period of 1 month, fewer than all missing Citibank cards should be attributed to her. While this statement has some validity, it is equally true that only Citibank credit cards were included in respondent's reconstruction of income even though other credit cards were received by, and sold or exchanged by, petitioner. Respondent's methodology therefore favors petitioner in that regard. We hold that respondent's methodology is not fatally flawed by the failure to take into account the credit cards provided to Reed's brother-in-law or stolen and sold by others. As a second level of attack on respondent's methodology *647 for reconstructing income, petitioner contests the $ 250-per-card sales price as being too high. She denies that she ever received money in exchange for stolen credit cards and contends that the items she received have an aggregate value far less than the total income amounts computed by respondent. Petitioner has offered little evidence of the description and quantity of items received in exchange for stolen credit cards and no evidence of their fair market value at the time received. In one cash transaction entered into with a confidential informant working for postal inspectors, petitioner received $ 250 in exchange for two stolen credit cards. This is the only evidence that tends to establish a lesser per card sales rate than determined by respondent. It is apparent that the amounts petitioner received in exchange for the stolen credit cards varied from instance to instance. Undoubtedly petitioner also expended sums of money not accounted for by the purchases identified by respondent. Petitioner has failed to carry her burden of proving that respondent's determination represents other than a reasonable estimate of the average amount petitioner received per stolen credit *648 card. Respondent allowed petitioner a $ 40 per card cost basis, but the record reflects a cost basis of between $ 20 and $ 40 per card. Given the state of this record, we hold that petitioner has not proven that respondent's reconstruction of income, as revised, is incorrect. Next, we must decide whether petitioner is liable for the addition to tax under section 6651(a)(1) for 1989. Respondent determined that petitioner did not file her 1989 Federal income tax return within the time prescribed by law and that she is therefore subject to the addition to tax under section 6651(a)(1). That section imposes an addition to tax for failure to file timely a return, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Sec. 6651(a)(1). The amount added to the tax is equal to 5 percent of the tax required to be shown on the return for each month or fraction thereof that it is late, but no more than 25 percent in the aggregate. Id. Respondent determined the addition to tax at the maximum 25-percent rate. A copy of a 1989 Federal income tax return for petitioner appears in the record. That copy bears the signature of a paid preparer and *649 the date April 11, 1991. It does not bear the signature of petitioner. The parties stipulated that petitioner claims this document to be a copy of a return filed with the Internal Revenue Service by her attorney and that respondent has no record of receiving the return. Petitioner introduced no other evidence on this issue. We cannot, on this record, find that petitioner timely filed the 1989 return. Even were we to find that it was filed, the date of the preparer's signature would require us to conclude that it was filed nearly 1 year late. There is no evidence that the time for filing was extended or that the failure to file timely was due to reasonable cause and not due to willful neglect. We therefore sustain respondent on this issue. Respondent also determined for 1989 and 1990 that petitioner is liable for the addition to tax imposed by section 6654(a) for underpayment of estimated tax. Petitioner offered no evidence on this issue. Our holding that petitioner received taxable income in 1989 and 1990 from the sale or exchange of stolen credit cards is therefore dispositive. It is clear from this record that petitioner did not remit the required installments of estimated *650 tax pursuant to section 6654(c) and (d) and has made no showing that she falls within the exceptions set forth at section 6654(e). We accordingly sustain respondent on this issue also. To reflect the foregoing and respondent's concessions, Decisions will be entered for respondent in accordance with respondent's revised determinations. Footnotes
1. Allocated equally between years.↩